(Cuyahoga County Probate Court.)

In the Matter of the Estate of WILLIAM S. JONES, on Application to Probate Spoliated Will.

*Probate of spoliated will—What evidence admissible on application to probate spoliated will.*

---

WHITE, J.

This is a proceeding to probate a spoliated will. The matter is before the court on objection to the cross-examination, or examination further of a witness to the will offered by the proponents.

On the face of it, it seems like a very simple matter, and yet when we examine these statutes regulating and providing for the proceedings to probate a will in the state of Ohio—when we reflect upon the nature of this proceeding, the importance of the proceeding as applied to this particular estate, and taking the full question presented, it is not an indifferent or easy matter to settle. One thing must be conceded: Whatever the scope of authority or jurisdiction conferred by law upon the probate judge, this is not a proceeding to try issues joined upon pleadings. It is not an action at law. It is a proceeding under the statutes of Ohio to probate a will.

It is said that because it is a proceeding to probate a spoliated will, that the law which has been settled by the Supreme Court with respect to the rights of parties to appear who may be adversary to the probate of the will, and submit evidence and call in witnesses, does not apply, and the question presented is narrowed down, whether under our statutes giving full authority to the Probate Court to probate a spoliated will, requiring notice to be given by the party propounding the will to all persons who may be interested to resist the probate of the will, and then providing the course of examination of witnesses as it does, whether that statute makes a special proceeding of this case to probate the spoliated will, and makes it a different proceeding from that in which application is made to probate an ordinary will. One thing is certainly settled: The construction of the statutes with respect to probating an ordinary will has been declared and decided finally by the Supreme Court in the state of Ohio, in the 4th Ohio State Reports. The matter is too plainly set forth in that decision to make it doubtful at all as to the character of the proceeding in the probate of an ordinary will—a will that is in existence; a will that can be produced intact, and exhibited in the probate court. That decision is to the effect that in the proceeding authorized for admitting a will to probate, persons interested to resist the probate of the will are not allowed to introduce evidence to contest its validity. There can be no doubt about the meaning of this decision. It was made very recently after the probate court was created, never has been reversed, never in any way affected by legislation, because the very statutes that are construed by the court are the statutes now in existence directing and authorizing the probate of wills in our state. The court say the single question presented for determination in the case is whether upon an application for the probate of a will evidence be admissible on behalf of those who resist its admission. And this depends upon the construction to be given to sec. 12 of the statute passed in 1857.

This is construing language which is exactly identical under this statute, which provides and prescribes the character and nature and extent of the proof on which the court of probate can hear the application to probate a spoliated will. We must be governed by the decisions of the Supreme Court, and the law is laid down, and ascertain what that means. It is claimed in this case on the part of the persons who are said to be interested in the probate of this will—Hon. E. T. Hamilton—it is said by counsel that he is interested in the sense in which this statute says that he may call witnesses, if he desires, in support of the probate of the will. I think a sufficient answer to this language is the quotation made in italics here in the decision of the court, "must be taken as meaning such other witnesses as any person interested in the subject-matter of the probate of the will may desire."

Now, it would be easy to dispose of this matter perhaps by just simply saying that this case is simply the probate of a will, a proceeding not different from the probate of an ordinary will; but there are some things

in the very nature of this proceeding that make it difficult to dispose of it in that way. In the first place, it is a judicial proceeding. In the second place, the court may be judicially satisfied that the will propounded is the unrevoked last will of William S. Jones, and should have effect in the disposition of his property in the case where the court will take judicial notice that the estate is being administered as that of an intestate. All that has been done is to be undone in the administration of this estate provided this will is established in the probate court. The whole matter is to reverse the settlement of this estate and put it upon another tack, to-wit: upon the testamentary disposition of Mr. Jones.

Much has been said with respect to the character of the proceeding to probate a will. Our statutes may be in a somewhat unfortunate situation when we look closely to the law as it has been established for a great many years in regard to the nature of this proceeding. It is true that there is a form of probate called the common form, which is merely the superficial and prima facie establishment of the will upon the affidavit of the executor. That was so in England; it is so now under the statutes passed in 1857, under which wills are probated in England. If the executor see fit, it is in his discretion, etc. (referring to the wills in England.)

Our statute, it is claimed, makes a distinction between the probate of an ordinary will, which can be presented intact, and the probate of a spoliated will, in fact that notice is required in the one case—not notice to the next of kin, not notice to the heirs at law, but notice to all persons who may be interested to resist the probate of the will—and that that notice brings all such persons within the jurisdiction of the court, gives them their day in court, and authorizes them to introduce evidence to resist the probate of the will—or perhaps not to go so far as that, because that is not the exact question before the court. The question now is whether persons may come in in obedience to this notice and sit by and guide somewhat in the introduction of the evidence upon the propounding of the spoliated will. I believe the extent of the objection goes to that effect, and not to the effect of an application to introduce testimony. It is claimed on the other hand that if a party has a right to sit by and cross-examine witnesses offered on the probate of the will, that they may also introduce evidence adverse so the probating of the will. Now, it is claimed that that is so because the legislature has definitely and clearly fixed the mode of giving notice to persons who may be interested to resist the probate of the will. And we must take these statutes, take the one that directs what proof and the extent of the testimony that can be offered on the probate of the will, and this statute requiring notice, and reconcile it in some way in the light of the nature of this proceeding, in the light of rights of parties, and ascertain just what these statutes do mean.

Now, the statute with regard to notice has been under judicial cognizance several times, and in the Third Circuit Reports, a decision was rendered on that subject, to the effect that where no persons interested in resisting the probate reside in the county, they should be notified by publication as the statute requires—the 26 Ohio State Reports showing that the Supreme Courts regard this provision with respect to notice as being of some force, and as fixing to some extent the rights of persons to be notified at least, if not summoned, to appear and make their case on the propounding of the spoliated will.

Is it reasonable that that should be the policy of the law? What has the court to find? What is established? What is the effect of the judgment of the court in the case of probating a spoliated will? It is much more than to find that the will is duly executed and attested by a person

who was prima facie of sound mind and memory and not under any restraint. This is the ordinary finding of the probate court in matters where·the will is presented and the witnesses to the will are examined, none other. In this case the court must find first of all that this will was unrevoked. It must find that it being in existence in a certain condition after the death of the testator, the court must find first of all it was unrevoked; then it must find that it was duly executed by a person of sound mind and memory, and not under any restraint when it was executed. These are facts which involve the capacity of the testator. On exhibition of this will it appears the signature is off the instrument, and that a cancellation is made by the testator at a certain time. It is therefore necessary for the court in this case, in order to pass judgment upon the question of the probating of this will, to ascertain whether this will was or was not revoked at the present time, and revoked by the testator at a time when he had capacity to make a will, or in other words, testamentary disposition, or at least was not incapacitated by reason of insanity, for that after all is the language of the statute—a will which is in existence subsequent to the death of the testator, and not revoked by him, or which has been destroyed, spoliated, after he became incapacitated by reason of insanity from making a will—such a will is a spoliated will, if it was spoliated or destroyed by some one after the testator became incapacitated by reason of insanity from making a will, under our statutes. This is what the court must find in this case. It must find it on the evidence. And it is said that the evidence offered by the ones who are friendly to the probating of the will is the only one to be heard. Is it the duty of the court to sit and listen simply to the testimony that may be offered, make no inquiry himself, under this statute which directs him to examine and ascertain from such witnesses—is it simply his duty to sit by and listen, without question, to such testimony as may be offered, and thereupon pass judgment upon the question whether this will was revoked by one who had capacity to make a will by reason of being a sane person. It seems to me that is going a good way. This is to a certain extent a judicial proceeding, and requires judgment, and the court is very much embarrassed to confine the evidence simply to what may be offered by the proponents affirmatively, without cross-examination, examination or re-examination, to support the will. It is embarrassing in the case of an ordinary will, and the court here, under this statute which requires notice to be given, is every hour confronted by persons called in, who demand some right to examine the testimony.

A practice has sprung up here which may not be commendable; and that is, not to allow cross-examination, in the sense of cross-examination, to controvert the testimony already put in, but to call out all facts and circumstances surrounding the execution of the paper, and surrounding the condition of the testator, either at the time he executed the instrument, or at the time he is said to have revoked it—all these facts are to be called out so that the court may act from all the testimony that may be offered. And I think that is the proper view to take of a case like this. It doesn't necessarily say that testimony adverse to the probating of the will may be introduced, but does undertake to lay a foundation and lay premises for a judicial decision upon the subject as to whether the will propounded is the last will, unrevoked, of the testator. And in this case I see no reason to vary that practice. I believe it to have been the practice from time immemorial, not only to allow that, but to go further and allow testimony. I have tried cases of probating spoliated wills, where evidence was allowed to be introduced without objection. But I think that is going too far. I don't think the statute allows that

to be done.   I think it was intended that such witnesses as any person interested to have the will probated may desire, means just what the Supreme Court say, Judge Bartley, deciding the case in Fourth Ohio State, that it is any person who is interested in having the will probated—not adverse to it.   I don't believe evidence can be introduced in this case adverse to the probate of this will.   But I am not saying that all evidence which may be offered may not be thoroughly sifted and examined by the court, and such persons as the court may allow in the exercise of sound discretion to ask questions in such a case.   It may seem that the language of Judge Bartley is not necessary to the decision of the point which he made, that it would be an idle formality, this matter of probating a spoliated will.   On the other hand, the theory and policy of our law is that it is not adversary; that it is ex-parte, because first, persons are not concluded by the judgment of the court on probate; and second, because they have their right to open and contest the will in the court of common pleas, which is a part of the policy and machinery of the law in Ohio, in bringing the will into contest.   In other words, on the probate of a will it cannot be contested; it must abide the judgment of the court of common pleas, before a jury, on the subject of contesting it.

So that in this case the court will overrule this objection to allowing this witness to be asked when William S. Jones died, for that is the question before the court, and will also prescribe the rule that the testimony here shall be examined by the court after such questions shall be asked by proponents as they see fit; and finally these persons who are interested in this estate, if any be called here by notice or otherwise, shall have the right to examine further these witnesses—not in cross-examination, but to elicit and call out all the facts and circumstances surrounding the conduct of the testator and his ability to deal with this testamentary disposition.   And any other limitation of it in my opinion would be unjudicial and not be the exercise of sound discretion.